IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| YUNSONG ZHAO, | ) | |
| Plaintiff, | ) | Civil No. 7:19-cv-538 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES C. MCCLAIN, <u>et al.</u>, | ) | By:    Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |

<u>MEMORANDUM OPINION</u>

This matter is before the court on defendants James C. McClain's and Brian Wilson's

motions for summary judgment, ECF Nos. 41 and 46, and motion to exclude plaintiff's expert

Roy Bedard, Ph.D., ECF No. 44. Defendants argue that they are entitled to summary judgment

because plaintiff Yunsong Zhao has adduced insufficient evidence to support his claims and,

alternatively, that defendants are entitled to qualified immunity. Zhao argues that he has

produced sufficient evidence to create a genuine dispute of material fact as to defendants'

alleged wrongdoing. The court heard argument on December 3, 2020, and the matters are ripe

for resolution.

I.      FACTUAL SUMMARY

This dispute arises out of the arrest, prosecution, and acquittal of plaintiff Yunsong

"Bellamy" Zhao in state court. Compl., ECF No. 1, at 1-3. Zhao filed a complaint against

Sergeant James C. McClain ("Sergeant McClain") of the Virginia Polytechnic Institute and

State University ("Virginia Tech") Police Department and Detective Brian Wilson ("Detective

Wilson") of the Blacksburg Police Department. Zhao claims he was maliciously prosecuted

for violating a Virginia law preventing non-citizens from owning a semiautomatic weapon with

a magazine which holds more than 20 rounds of ammunition. See id. He further claims Sergeant McClain and Detective Wilson conspired to deprive him of his civil rights by, in part, fabricating evidence against him. Id.

Zhao alleges three counts in his complaint: (1) malicious prosecution under the Fourth and Fourteenth Amendments, Count One; (2) Due Process Clause violations as a result of fabrication of evidence under the Fourteenth and Fifth Amendments, Count Two; and (3) civil conspiracy to violate a constitutional right under 42 U.S.C. § 1983, Count Three. Zhao requests a jury trial on all eligible issues, recovery of all costs of the litigation, and punitive damages in an amount no less than $20,000, as well as compensatory damages, including for his pain and suffering, in an amount to be determined at trial.

For all times relevant to this action, Zhao was a Chinese national in the United States on an F-1 student visa as a full-time student at Virginia Tech. Id. at 4. Zhao arrived from China in July 2017, and claims he was harassed by Virginia Tech police as early as August 2017 about a police surplus vehicle he claims he lawfully purchased. Id. at 6-7. Zhao claims that Sergeant McClain initially took interest in Zhao due to this vehicle and proceeded to surveil him for six months prior to his arrest. Id. at 7.

Sergeant McClain indicates that he became aware of Zhao in January 2018 when Virginia Tech Police, without his involvement, received information that Zhao had purchased 30-round magazines and an AR-15, which if combined, would constitute a crime. McClain Dep., ECF No. 46-3 at 2. He claims he was told that his superior, Lieutenant Tony Haga, had already asked the Blacksburg Police to send an officer to monitor Zhao at a shooting range by the time Sergeant McClain was involved. Id. He indicates that his department had received the

information about Zhao through a salesperson at the White Tail Outfitters. Id. at 2-3. The Montgomery County Sheriff's Department relayed the tip to Sergeant McClain's department, and McClain states he never spoke directly to anyone at the Montgomery County Sheriff's Department. Id. at 11.  He also states that he learned background information about Zhao through a Virginia Tech Police Department Officer Safety Bulletin ("OSB"), stating that Zhao had already taken several other actions to get noticed by law enforcement. OSB, ECF No. 46-1. He claims that Zhao had drawn police attention over four months prior to his involvement by loitering at the rear entrance of the Virginia Tech Police Department station at night, parking in dark alleys in Radford with zip ties and a fake police badge in his car, purchasing thousands of rounds of ammunition, and calling to report he had been in an accident which never occurred. Id. Lieutenant Haga testified that OSBs were regularly disseminated through email, hard copy, and discussed in department conversations. Haga Dep., ECF No. 46-2 at 1.

Zhao claims that despite never obtaining any evidence of an illegal purchase of a firearm or ammunition by Zhao, Sergeant McClain followed Zhao, visited firearm stores to question their owners after Zhao visited them, and requested firearm stores in the surrounding area to deny selling arms or ammunition to Zhao. ECF No. 1 at 7-8. In support of this suspicion, Zhao cites an incident in which he was denied service by Atlas Tactical in Newport, Virginia, which claimed he failed his background check, though Zhao later verified with the Virginia State Police that he had not failed his background check. Id. at 8. He claims the store later told him that Sergeant McClain had asked them not to sell Zhao weapons. Id. He also claims he was told by a shooting range which he had visited twice before without incident that he was on the range's "blacklist." Id. at 9.

3

Sergeant McClain represents that he took no part in the investigation of Zhao prior to January 2018, when he was involved primarily to obtain search warrants per Lieutenant Haga's command. ECF No. 46-2 at 3. Although he was not directed by Lieutenant Haga to do so, Sergeant McClain also obtained an arrest warrant. Id.

The parties agree that this case focuses on Zhao's purchase of a Bushmaster XM-15 Assault Rifle ("AR-15"), which he ordered from Indiana with the help of Pawn Plus in Christiansburg, Virginia, as well as his purchase of several magazines for the AR-15 from Matt Hagan Outdoors in Blacksburg, Virginia, and White Tail Outfitters in Christiansburg, Virginia. Id. at 9, 11. The AR-15 was packaged with two 30-round capacity magazines, but—knowing he was prohibited from owning magazines of that type—Zhao claims he refused possession of those magazines, instead making a deal with Pawn Plus for a different item in exchange for the 30-round magazines. He states he later purchased two 20-round magazines at Matt Hagan Outdoors, which he claims were the only ones the store had in stock that day. He adds that he purchased a third 20-round magazine from White Tail Outfitters. Id. at 10-11. Sergeant McClain and Lieutenant Haga both testified that they learned of Zhao's alleged purchase of a 30-round magazine from the White Tail Outfitters' salesperson who Zhao claims sold him a 20-round magazine. ECF No. 46-2 at 2; ECF No. 46-3 at 11. They both also indicate that the information came to them indirectly. Id.; Email to Haga, ECF No. 61-8.

Sergeant McClain claims his involvement in the Zhao investigation was predicated on Monte Smith's statement that he sold Zhao a 30-round magazine at White Tail Outfitters. ECF No. 47 at 4; McClain Dep., ECF No. 46-3 at 2-3. Smith testified in his deposition that he was not aware at the time of purchase that Zhao was not a U.S. citizen, but that he did

4

know that non-citizens could not possess certain firearms. ECF No. 46-4 at 1. Zhao claims that at his criminal trial, no receipt of his purchases was ever furnished by the state as evidence and that Smith testified that the store does not offer or retain records of itemized receipts or inventory records. ECF No. 1 at 11-12; Smith Trial Test., ECF No. 61-2 at 20-21. Zhao claims that, through the use of a private investigator, he learned that White Tail Outfitters does offer itemized receipts and retains a copy of an itemized receipt. Id. at 12. During the criminal trial, Zhao's private investigator testified that he received an itemized receipt from White Tail Outfitters and produced a receipt for the court. Criminal Trial Tr., ECF No. 61-2 at 98. Smith also testified that the prices of a 20-round magazine and a 30-round magazine are identical at White Tail Outfitters. Smith Trial Test., ECF No. 61-2 at 22-23.

The parties agree that on January 26, 2018, Zhao checked his AR-15 out of the Virginia Tech lockers and visited the Montgomery County Shooting Range with his friend Taotao Wang. Haga Dep., ECF No. 42-6 at 6; McClain Dep. ECF No. 42-9 at 7. While at the range, Zhao and Wang took photos and videos, which Zhao claims all support the fact that he only possessed and used 20-round magazines while at the range. ECF No. 1 at 12-14. Lieutenant Haga received an email that day notifying him that Zhao had checked the AR-15 out of the Virginia Tech lockers. See Email to Haga re: AR-15 Check Out, ECF No. 42-10. Upon learning that Zhao had removed his AR-15, Lieutenant Haga requested Blacksburg Police Department Lieutenant Quinton R. Self, Jr. to surveil Zhao at the gun range. ECF No. 42-6 at 11. Lieutenant Self directed Detective Wilson, through an order communicated by Detective Adam Scragg, to surveil Zhao at the gun range. Wilson Dep., ECF No. 42-1 at 7. Sergeant

McClain denies having any involvement in the decision to solicit the help of the Blacksburg Police Department in surveilling Zhao. McClain Dep., ECF No. 42-7 at 9.

Detective Wilson denies having any contact with Zhao prior to the surveillance assignment. He claims he was unaware of the details of the investigation into Zhao and was only familiar with information he received from the OSB and information he may have received during Blacksburg Police Department Daily Situational Briefings. Wilson Dep., ECF No. 42-1 at 3-6. Detective Wilson describes his assignment as going "to the Montgomery County range and to see if Zhao was there and utilizing the 30-round magazine," but claims he was unaware of why he was being asked to do this and did not know that Zhao was a non-citizen. Id. at 8. He claims he was made aware by an email that Zhao's possession of an AR-15 containing a 30-round magazine would be a crime, but he is unsure of the source of that email and when he received it. Id. at 8-9.

Detective Wilson stated he was complying with his commanding officer's order when he went home, changed into civilian clothes, and brought his personal rifle to avoid detection as law enforcement. Id. at 11. He claims that after arriving at the range, he walked by Zhao's booth to enter his own and identified the 30-round magazine from five feet away based on the length of the magazine portion hanging below the rifle. ECF No. 53 at 40. He was within five feet of Zhao for five to ten seconds. Id. Detective Wilson testified that by the time he reached his own booth, approximately four stalls from Zhao, Zhao had stopped firing and did not fire the rifle again before leaving the range. Id. at 41. Despite possessing department issued surveillance equipment at the time, Detective Wilson did not take any photos or videos of his surveillance of Zhao. Id. at 42-44. He claims he did not have a chance to take any photos or

6

videos because his surveillance equipment would have been too conspicuous. Id. at 43-44.

When asked at trial why he did not take photos or videos on his cell phone, which had been

functioning the day of his surveillance, Detective Wilson claimed his phone had died. Wilson

Trial Test., ECF No. 62-8 at 21-22. Zhao alleges that the failure to record the encounter or

review the shooting range's footage is unreasonable or, in the alternative, that Detective

Wilson did record the encounter but did not produce the evidence because it was exculpatory.

ECF No. 1 at 18.

      Per the surveillance plan with Detective Wilson, Detective Scaggs arrived at the range

in uniform using his patrol vehicle, just as Zhao and Yang were packing to leave. Wilson Dep.,

ECF No. 53 at 33-34. Detective Wilson claims he relayed what he saw to Detective Scaggs as

soon as he arrived. Id. Detective Wilson claims he did not intend to arrest or stop Zhao at the

shooting range because his assignment was only to surveil and report his observations and

because the range was outside of his jurisdiction as a Blacksburg Police officer. Id.; see also

Va. Code § 19.2-250. Further, he claims he did not perceive Zhao as an imminent threat

warranting arrest. Id. at 68. At trial, Detective Wilson testified that he did not apprehend Zhao

or confiscate the firearm and ammunition because he "was without back-up, [] didn't have a

vest, [] had nothing other than [his] badge to identify [him]self as [a] police officer," and that

he didn't have restraints at the time. Wilson Trial Test., ECF No. 62-8 at 54. Zhao contends

Detective Wilson knew that a confrontation with Zhao might confirm he did not possess a

30-round magazine, which would preclude Zhao's arrest on that charge. ECF No. 1 at 19-20.

      Detective Wilson claims he either called or texted Lieutenant Self about his

observations, who asked him to record them in an email to himself and Lieutenant Haga.

Wilson Dep., ECF No. 53 at 54-55. The email details that Detective Wilson was doing surveillance on January 26, 2018, at a shooting range located in the Jefferson National Forest in Montgomery County.   The email states: "I observed Yungsong Zhao with another unidentifiable Asian male firing a .223 caliber weapon with 30 round magazine. Both subjects left the range at approximately 1710 hrs, the weapon along the with magazine was placed in the trunk of Zhao's vehicle." Wilson Email, ECF No. 42-8. Zhao claims Detective Wilson misrepresented his observations by emailing his superiors that he saw Zhao put the gun and magazine into the trunk of his car upon leaving, when in fact he did not see what Zhao did with the magazine. See Prelim. Hr'g, ECF No. 61-4 at 39 ("I could see them place the rifle, I did not see them place the magazine, sir.").

Detective Wilson claims he played no further role in the investigation into Zhao after sending the email to his superiors summarizing his surveillance. Wilson Dep., ECF No. 53 at 87. Detective Wilson and Sergeant McClain both testified that they did not know each other and had not communicated directly regarding the Zhao investigation or for any other reason during the relevant time period. Id. at 78-79; McClain Dep., ECF No. 42-9 at 14.

On January 27, 2018, Lieutenant Haga forwarded Detective Wilson's email to Sergeant McClain. Wilson Email, ECF No. 42-8. Sergeant McClain claims Lieutenant Haga asked him to get a search warrant for Zhao's room. McClain Dep., ECF No. 54 at 24. He stated that he obtained a search warrant for Zhao's residence and his vehicles on January 27, 2018, and obtained an arrest warrant for Zhao on January 29, 2018. Id. at 24-25. To obtain the warrants, Sergeant McClain testified verbally before a state magistrate and provided an affidavit outlining his probable cause. Id. at 55-56. The affidavits included that (1) on January 25, 2018, Virginia

8

Tech Police learned that Zhao had purchased an AR-15; (2) on January 22, 2018, law enforcement learned that Zhao had purchased a 30-round magazine from White Tail Outfitters; (3) on January 26, 2018, Zhao checked his AR-15 out of the student gun locker; (4) on that same day, Detective Wilson witnessed Zhao firing a .223 caliber weapon with a 30-round magazine; and (5) also on that day, Detective Wilson witnessed Zhao place the weapon and magazine in the trunk of his vehicle. Warrant Affidavits, ECF No. 42-11. The parties agree Sergeant McClain did not search Zhao's room until January 29, 2018, after first obtaining and executing the arrest warrant. McClain Dep., ECF No. 54 at 25, 27. Sergeant McClain claims he did not take additional steps to verify Detective Wilson's statements, because "[h]e is a certified police officer of Virginia, so [he] took his word for it." Id. at 47. Zhao claims, in contrast, that Sergeant McClain did not verify Detective Wilson's statements because they both knew Zhao did not possess a 30-round magazine and were conspiring to frame him. ECF No. 61 at 21.

It is undisputed that no 30-round magazines were found during the search of Zhao's residence, vehicles, or person. McClain Dep., ECF No. 54 at 24-25. Zhao's criminal charges were dismissed on September 24, 2018, by the state circuit court judge at the close of evidence on the grounds that there was insufficient evidence to send the charges to a jury. Id. at 3.

## II.   LAW OF SUMMARY JUDGMENT

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the

court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with … [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)).

Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III.   MOTIONS FOR SUMMARY JUDGMENT

Zhao alleges that Sergeant McClain and Detective Wilson worked together to fabricate evidence against him, mislead a state magistrate to obtain search warrants, and wrongfully prosecute him for a crime which they knew he did not commit. Sergeant McClain and Detective Wilson both move for summary judgment on the grounds that they are either entitled to qualified immunity or that Zhao has failed to meet his burden of production to create a genuine dispute of material fact. They claim that without substantiating evidence, Zhao's claims are no more than pure speculation.

The court will first address Zhao's claims on the merits, because the claim of qualified immunity is only relevant if the court finds that a right has indeed been violated. Booker v. South Carolina Dept. of Corrections, 855 F.3d 533, 537-38 (4th Cir. 2017) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)) ("Qualified immunity protects officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'").

11

### A.      DETECTIVE WILSON

Zhao contends that Sergeant McClain and Detective Wilson maliciously prosecuted him in violation of the Fourth Amendment, as applied to the states through the Fourteenth Amendment. He brings his claim pursuant to § 1983, claiming that the officers knew that probable cause did not exist when they pursued an arrest warrant. A malicious prosecution claim brought under § 1983 "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 161-62 (4th Cir. 2000). To establish a malicious prosecution cause of action, a plaintiff must show that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)). The parties do not dispute that the criminal proceedings acquitted Zhao of all charges, so the court will focus on the first and second prongs.

Zhao cannot demonstrate Detective Wilson caused the procurement of the arrest warrant, because Lieutenant Haga, Sergeant McClain, and the state magistrate serve as intervening actors breaking the causal chain. Plaintiffs must establish both but-for and proximate causation. Evans, 703 F.3d at 647. Subsequent acts of independent decision-makers such as prosecutors, grand juries, and judges, "may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." Id.; see also Rhodes v. Smithers, 939 F. Supp. 1256, 1274 (S.D.W.V. 1995) ("[W]here an officer presents all relevant probable cause evidence to an intermediary, such as a

prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.").

First, the court finds that Detective Wilson was merely following orders in surveilling Zhao and was not acting of his own volition. Second, the court finds Detective Wilson did nothing more than communicate his observations to his superiors per their command. While Zhao claims that Detective Wilson misidentified the magazine in question as a 30-round magazine, there is no evidence that he fabricated his statement. Third, the court finds that Lieutenant Haga's decision to order Sergeant McClain to obtain a search warrant as well as Sergeant McClain's independent decision to use Detective Wilson's statement to obtain an arrest warrant constitute intervening acts. Detective Wilson may have been aware of law enforcement's suspicions regarding Zhao, but there is no evidence he was or should have been aware that his statement alone would be the foundation of Sergeant McClain's warrant applications.

Even if the court finds Detective Wilson should have known his report would have directly caused the procurement of an arrest warrant, Zhao cannot show the application was unsupported by probable cause. A state magistrate found probable cause to issue warrants, a grand jury found probable cause to indict Zhao, and a state general district court judge found probable cause at the preliminary hearing. Therefore, to succeed on this prong, Zhao must demonstrate that Detective Wilson was aware that the magazine Zhao was using was not a 30-

round magazine and thereby misrepresented the information on which the various probable cause findings were based.

Zhao claims that the only explanation for Detective Wilson's confident assertion that he saw a 30-round magazine is an attempt to intentionally mislead. He believes no reasonable officer could express confidence in his observation considering the brevity of the surveillance and the distance at which Detective Wilson observed Zhao. While his confidence in his brief observation may have been overstated, there is absolutely no evidence that Detective Wilson reported his surveillance findings in bad faith. Zhao suggests Detective Wilson fabricated his observations to aid Sergeant McClain's fraudulent investigation, but he provides no evidence that the officers ever even communicated, much less agreed to bring false charges against him. Indeed, Sergeant McClain was not involved in the investigation until after Lieutenant Haga solicited the help of the Blacksburg Police Department. Zhao also points to Detective Wilson's statement in the email that he witnessed Zhao place the firearm and the magazine in the trunk of his car, when he later admitted that he did not see the magazine placed in the trunk of the car, as evidence of fabrication. However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987); see also Baily v. Braxton, No. 3:12CV537, 2013 WL 4880846, at *8 (E.D. Va. Sept. 12, 2013) (stating that inconsistent statements "may be caused by forgetfulness, a misunderstanding of a question at a prior hearing, a refreshed recollection, perjury, or other reasons"), appeal dismissed, 579 Fed. App'x. 208 (4th Cir. 2014).

Further, Zhao claims the failure to record the surveillance with photos or videos and the decision not to apprehend Zhao or confiscate his firearms confirms that Detective Wilson

knew that he did not observe any wrongdoing. However, Detective Wilson explained that he did not use his surveillance equipment to avoid detection, and that he did not engage with Zhao both because he was outside his jurisdiction and because the scope of his assignment was purely surveillance. Detective Wilson acted on the understanding that the Virginia Tech Police, not the Blacksburg Police, were the lead investigators in the case. To suggest that Detective Wilson's behavior evinces deceitfulness is a bridge too far.

Zhao also claims Detective Wilson violated his due process rights, but each of these claims is also predicated on Zhao's theory that Detective Wilson knowingly falsified his observations to Lieutenant Self and Lieutenant Haga. To prevail on a due process claim, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012). Contrary to defendants' contention, Zhao can proceed on a due process claim despite being acquitted of the charges. See, e.g., Burley v. Baltimore Police Dep't, 422 F. Supp. 3d 986, 1017 (D. Md. 2019); see also McDonough v. Smith, —— U.S. ——, 139 S. Ct. 2149 (2019). However, to defeat summary judgment on his due process claim, Zhao must demonstrate a genuine dispute of material fact as to the fabrication of evidence. As discussed above, Zhao has offered nothing more than his speculative view that Detective Wilson fabricated evidence in reporting his observations to Lieutenant Haga and Lieutenant Self.

Finally, Zhao's civil conspiracy claim cannot survive summary judgment because he has not provided any evidence of an agreement between Detective Wilson and Sergeant McClain. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence

that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right (in this case the right to access the courts)." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992). "[W]here direct evidence of a meeting of the minds is lacking, the plaintiff 'must come forward with specific circumstantial evidence that each member ... shared the same conspiratorial objective.'" Willis v. Blevins, 966 F. Supp. 2d 646, 660 (E.D. Va. 2013) (quoting Brown, 983 F.2d at 577).

This case is bereft of conspiracy evidence. Zhao points to the fact that Sergeant McClain did not validate Detective Wilson's observations as evidence of a conspiracy, but provides no evidence, direct or circumstantial, to refute Sergeant McClain's otherwise credible explanation that he trusted the eye-witness testimony of a fellow officer. Further, Zhao makes a great deal of the fact that Sergeant McClain waited two days, until after Zhao was arrested, to search his dorm room and vehicles. Zhao suggests that this is evidence that Detective Wilson communicated to Sergeant McClain that a search would not uncover inculpatory evidence because Detective Wilson knew there was no 30-round magazine, and told Sergeant McClain to wait to execute the search until Zhao is in custody. However, speculation and conjecture are a far cry from evidence. Detective Wilson and Sergeant McClain testified that they had never communicated, let alone conspired, and so Zhao's civil conspiracy claim against Detective Wilson cannot survive summary judgment.

## B.    SERGEANT McCLAIN

Zhao also levels the same three claims of malicious prosecution, fabrication of evidence in violation of due process, and civil conspiracy against Sergeant McClain.

16

As with the claim of malicious prosecution against Detective Wilson, Zhao must demonstrate that Sergeant McClain fabricated evidence to demonstrate causation and lack of probable cause. "An officer may be found to have caused the seizure and remain liable to a wrongly indicted defendant if the officer lied to or mislead the prosecutor." Shrewsbury v. Williams, 439 F. Supp. 3d 765, 778 (W.D. Va. 2020) (citing Evans, 703 F.3d at 647 (citations omitted)). "Stated differently, a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] mislead or pressured the prosecution.'" Id. at 648 (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)); see also Snider v. Lee, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring) ("A law enforcement officer who presents all relevant probable cause evidence to a prosecutor, a magistrate, or other intermediary is insulated from a malicious prosecution claim where such intermediary makes an independent decision to pursue prosecution or issue a warrant, . . . unless the officer concealed or misrepresented facts or brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne."). Therefore, although a neutral magistrate, a general district court judge, and a grand jury found probable cause, a malicious prosecution charge can survive if it seems the applying officer misled the otherwise neutral intervening factors.

Given the court's finding that there is no evidence that Detective Wilson fabricated his eyewitness testimony of Zhao, the court finds the claim of malicious prosecution against Sergeant McClain cannot survive. Zhao rests this claim entirely on the theory that Detective Wilson and Sergeant McClain worked in concert to deceive the judicial system by knowingly including false statements in the application for search and arrest warrants. The only fact

included in the affidavits that the parties dispute is whether Detective Wilson observed Zhao fire a 30-round magazine. The court found Detective Wilson did not fabricate his report, and so the court finds no intentional misrepresentation on Sergeant McClain's behalf in including this representation in his application. Zhao argues that Sergeant McClain's decision to obtain an application without verifying Detective Wilson's report demonstrates a lack of probable cause. However, the court does not "second guess" a determination by a neutral magistrate or judge, unless probable cause was "plainly lacking." Shrewsbury v. Williams, 439 F. Supp. 3d 765, 781 (W.D. Va. 2020) (citations omitted). A state magistrate, a grand jury, and general district court judge all found probable cause, and the court finds no reason to unsettle those determinations.

Zhao's due process claim against Sergeant McClain for fabrication of evidence cannot survive for the same reason that the claims against Detective Wilson could not survive. Zhao has not produced evidence to create a genuine dispute of material fact as to fabrication. At the hearing, counsel for Zhao conceded that without fabrication of evidence, there was no due process violation.

Although Zhao pleads fabrication of evidence as the basis of his due process claim, he also suggests that the government's failure to disclose receipts from his purchase constitutes a failure to turn over exculpatory evidence. This must proceed under a Brady analysis. See Brady v. Maryland, 373 U.S. 83, 83 (1963). "A Brady violation occurs when a defendant can show that the evidence at issue (1) was favorable to the defendant, (2) material to the defense, and (3) the prosecution had the evidence but failed to disclose it." Johnson v. Baltimore Police Dep't, No. CV ELH-19-00698, 2020 WL 1169739, at *22 (D. Md. Mar. 10, 2020).

This claim cannot proceed because Zhao cannot demonstrate the government possessed the evidence but failed to disclose it. At the criminal trial and in his deposition in the instant case, Smith testified that he did not have a copy of the receipt from Zhao's purchase, White Tail Outfitters does not provide itemized receipts, and White Tail Outfitters does not conduct inventory assessments regularly to determine which items were in stock and sold. Based on Smith's representation, there is no evidence that the government possessed receipts reflecting Zhao's purchase. During his criminal trial, Zhao presented evidence that a private investigator was able to obtain an itemized receipt from White Tail Outfitters. However, while that fact may undermine the Smith's credibility regarding the record keeping practices of White Tail Outfitters, it does not establish that the government possessed an exculpatory receipt which was not produced in discovery in violation of Brady. Sergeant McClain could not possess the receipt in question because he was not the recipient of the tip from White Tail Outfitters that Zhao purchased a 30-round magazine. He inherited this case after Lieutenant Haga had already acted on the tip, bringing in the help of the Blacksburg Police. Because Zhao did not put forth any evidence to suggest Sergeant McClain possessed and withheld an exculpatory receipt, he has not established a genuine dispute of material fact of a constitutional violation.

Finally, in support of his civil conspiracy claim against Sergeant McClain, Zhao presents a narrative in which Sergeant McClain doggedly pursues Zhao without any real evidence of wrongdoing aside from the unsubstantiated statement of a salesperson and the questionable eyewitness testimony of a fellow officer. He argues that Sergeant McClain's failure to obtain substantiating evidence that Zhao possessed an AR-15 and 30-round magazine, such as

reviewing video footage, questioning gun store owners, or taking photographs is evidence that he intended to target Zhao regardless of the evidence found. He further suggests that Sergeant McClain's willingness to obtain a search and arrest warrant on Detective Wilson's unsubstantiated eyewitness testimony alone supports this theory. Zhou contends that Detective Wilson's statements, absent photographic or video evidence, lack any indicia of credibility. Finally, as discussed above, Zhao believes the combination of Detective Wilson's alleged failure to adhere to standard surveillance protocol along with Sergeant McClain's alleged failure to independently validate the information he indirectly received is sufficient evidence of a conspiracy to survive summary judgment.

However, this argument does not hold water. Sergeant McClain was not involved in the investigation until after Lieutenant Haga involved the Blacksburg Police Department. Sergeant McClain did not receive information that Zhao purchased a 30-round magazine from White Tail Outfitters; his superior merely conveyed this information to him. Sergeant McClain did not select Detective Wilson to conduct the surveillance. That decision was made by Lieutenant Self, at Lieutenant Haga's behest. Indeed, Detective Wilson never communicated with Sergeant McClain directly. His findings were forwarded to Sergeant McClain by Lieutenant Haga. The evidence presented by the defendants shows that Sergeant McClain was largely complying with orders and was not orchestrating the investigation himself. The Virginia Tech Police Department's monitoring of Zhao occurred independently. Sergeant McClain's involvement in the prosecution is primarily limited to obtaining the search and arrest warrants, actions taken pursuant to an order from Lieutenant Haga.

Zhao emphasizes that Lieutenant Haga did not direct Sergeant McClain to obtain an arrest warrant, and when asked why the search warrants were not executed prior to obtaining an arrest warrant, he stated that he did not know. Rule 30(b)(6) Dep. of Virginia Tech Police Dep't., ECF 56 at 42. However, based on the report that Zhao purchased a 30-round magazine and a fellow officer's eyewitness testimony that Zhao was using it, Sergeant McClain believed he had sufficient probable cause to obtain an arrest warrant. Indeed, a magistrate found probable cause and issued the arrest warrant. Zhao suggests that between January 27, when the search warrants were obtained, and January 29, when the arrest warrant was obtained, Detective Wilson dissuaded Sergeant McClain from executing the search warrants before arresting Zhao. Zhao argues that Sergeant McClain's alleged decision to acquiesce in Detective Wilson's suggestion constitutes conspiracy.

However, as discussed earlier, there is no evidence of any communication between Sergeant McClain and Detective Wilson, much less an agreement to falsely prosecute Zhao. Zhao has also failed to produce circumstantial evidence of a common purpose in the absence of an agreement. Speculative theories regarding the reasons why Sergeant McClain refrained from executing the search warrants earlier cannot, on their own, create a genuine dispute of material fact.

## IV.    CONCLUSION

Because the court finds that there is no genuine dispute of material as to any of the claims Zhao brought against Detective Wilson and Sergeant McClain, it finds no violation of a constitutional right. Therefore, it need not address the issue of qualified immunity.

Accordingly, the court **GRANTS** Detective Wilson's and Sergeant McClain's motions for summary judgment, **DISMISSING with prejudice** Zhao's claims of malicious prosecution, due process violation, and civil conspiracy. Defendants' motion to exclude the Brevard's expert testimony is **DENIED as moot.**

An appropriate Order will be entered.

Entered:  December 28, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.28 15:01:31
-05'00'

Michael F. Urbanski
Chief United States District Judge